UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

RONALD DERYKE,

                Plaintiff,                      Case No. 1:22-cv-590

v.                                    Honorable Sally J. Berens

CARSON CITY CORRECTIONAL
HEALTH CARE et al.,

                Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In an order (ECF No. 5) entered on August 8, 2022, the Court denied Plaintiff leave to proceed *in forma pauperis* because he had sufficient funds to pay the $402.00 filing fee. Plaintiff paid the full filing fee on August 19, 2022. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a

court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 4.)

## Discussion

### I.     Motion to Appoint Counsel

Plaintiff seeks appointment of counsel to represent him in this matter. (ECF No. 4.) Plaintiff asserts that the inmate who was assisting him was released on parole on July 7, 2022, and that he "really [does not] know what [he is] doing when it comes to filing stuff in court." (*Id.*, PageID.23.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros*.); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. The Court, therefore, will deny Plaintiff's motion to appoint counsel. (ECF No. 4.)

## II.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the Carson City Correctional Health Care department, as well as Correctional Officer Unknown Jones, Health Care Grievance Investigator Patricia Lamb, and Nurse Unknown Party.

Plaintiff alleges that on February 4, 2022, he was suffering from abdominal pain and was sent to a local hospital for evaluation and treatment. (ECF No. 1, PageID.3.) He was diagnosed with constipation and sent back to DRF "with directions for such a diagnosis." (*Id.*)

The next day, between 11:30 a.m. and noon, Plaintiff tried to get out of bed and pull on his pants when he felt "excruciating pain within his abdomen that caused him to pass out and fall face first into a chair and then onto the floor." (*Id.*) Several inmates (his "cubies") came to his assistance, got him off the floor, and placed him on the bed. (*Id.*) Those inmates then contacted staff. (*Id.*) Defendant Jones was on duty and came to Plaintiff's cube, phone in hand. (*Id.*)

Defendant Jones told Plaintiff "to quit playing around and pick up the phone on the wall." (*Id.*) Plaintiff told her that he could not stand because of the pain, and Defendant Jones gave him the phone so that he could speak to medical staff. (*Id.*) He alleges, however, that "[n]othing took place in spite of the obvious pain [he] was in." (*Id.*)

Around 2:00 p.m., Defendant Unknown Party came to the unit to make COVID-19 rounds. (*Id.*) Several of Plaintiff's "cubies" tried to get the nurse's attention "but were all told to 'shut the f*** up' and stay in their cube." (*Id.*) The nurse eventually came to the cube and briefly assessed Plaintiff, but "went back to doing her COVID rounds, allowing [Plaintiff] to continue suffering in pain." (*Id.*) After concluding rounds, Defendants Jones and Unknown Party came to Plaintiff's cube and told everyone to "get the f*** out." (*Id.*) The nurse evaluated Plaintiff and "determined that something was wrong." (*Id.*, PageID.3–4.) She had Defendant Jones order a wheelchair to push Plaintiff to the healthcare department. (*Id.*, PageID.4.)

Plaintiff was transported to the local hospital around 3:00 p.m. (*Id.*) During the whole time, Plaintiff thought he had appendicitis. (*Id.*) He claims that if he had, he "could have died due to the extremely nonchalant manner in which Carson City staff (Security and Medical) responded to his medical needs." (*Id.*) Plaintiff was ultimately admitted to the hospital and diagnosed with mesenteric adentitis, an intestinal infection. (*Id.*) He stayed in the hospital for four days. (*Id.*)

Plaintiff claims that when he was discharged from the hospital, he returned to DRF with a "regimen[] (both physical and medical) to be followed by doctor's orders." (*Id.*) He claims, however, that medical staff failed to comply with that regimen. (*Id.*) On February 16, 2022, Plaintiff began sending multiple health care requests to staff reminding them that he was under doctor's orders and that those orders were not being followed. (*Id.*)

Plaintiff used the grievance process to complain about his medical care. (*Id.*) He asserts that Defendant Lamb, in response to his grievance, "stated that everything was handled just fine because [Plaintiff's] medical needs were Urgent and not Emergent." (*Id.*) Plaintiff claims that "[i]nstead of taking responsibility for the poor response to [his] medical situation, [Defendant] Lamb decided to play s[e]mantics and justify the poor treatment." (*Id.*)

Based on the foregoing, the Court construes Plaintiff's complaint to assert violations of his Eighth Amendment rights. He seeks compensatory, punitive, and "ancillary" damages. (*Id.*, PageID.5.)

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Defendant Carson City Correctional Health Care

As noted *supra*, Plaintiff names the Carson City Correctional Health Care department as a Defendant. The United States Court of Appeals for the Sixth Circuit, however, has concluded that a state prison's medical department is not a "person" subject to suit under Section 1983. *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006). Plaintiff, therefore, fails to state a claim against the Carson City Correctional Health Care department "as a matter of law." *Id.* at 356.

Plaintiff also faults the "Carson City Correctional Health Care Staff" for not complying with the treatment regimen prescribed by the doctor who attended him at the local hospital. (ECF No. 1, PageID.4.) To the extent Plaintiff has named the Carson City Correctional Health Care department as a way to refer to all medical staff, he cannot maintain such a claim. "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for" the incidents Plaintiff describes in his complaint. *See Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that

demonstrate what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))). The Court, therefore, will dismiss Plaintiff's claims against the Carson City Correctional Health Care department.

### B.     Eighth Amendment

Plaintiff suggests that Defendants Jones, Lamb, and Unknown Party violated his rights under the Eighth Amendment by failing to provide adequate medical care in a timely fashion. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v.*

*Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison

9

official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007);

*McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 604-05 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.     Objective Component

In his complaint, Plaintiff alleges that he suffered from such "excruciating pain" in his abdomen that he passed out and fell face first "into a chair and then onto the floor." (ECF No. 1, PageID.3.) At this stage of the proceedings, the Court assumes that Plaintiff has adequately alleged the objective component of the relevant two-prong test with respect to his physical condition.

### 2.     Subjective Component

#### a.     Defendant Lamb

Plaintiff takes issue with Defendant Lamb's response to his grievance concerning his medical care. (ECF No. 1, PageID.4.) He asserts that she responded that "everything was handled just fine because [Plaintiff's] medical needs were Urgent and not Emergent." (*Id.*) According to Plaintiff, Defendant Lamb "decided to play s[e]mantics and justify the poor treatment" instead of taking responsibility "for the poor response" to his situation. (*Id.*) Section 1983 liability, however, may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999). Because Plaintiff's sole allegation against Defendant Lamb is that she denied an administrative grievance, Plaintiff fails to state an Eighth Amendment claim against her.

### b.       Defendant Unknown Party

Plaintiff alleges that Defendant Unknown Party violated his Eighth Amendment rights by delaying his eventual transport to the medical department and, ultimately, the hospital. Specifically, Plaintiff contends that when she came to the unit to do COVID rounds, she assessed Plaintiff but "went back to doing her COVID rounds, allowing [him] to continue suffering in pain." (ECF No. 1, PageID.3.) Defendant Unknown Party concluded her rounds and then came back to assess Plaintiff, at which time she "determined that something was wrong." (*Id.*, PageID.3–4.)

"[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Weatherspoon v. Woods*, No. 16-1277, 2017 WL 3923335, at *5 (6th Cir. Feb. 24, 2017) (internal quotes omitted, quoting *Napier v. Madison Cnty.*, Ky., 238 F.3d 739, 742 (6th Cir. 2001)). Plaintiff offers no facts to support an inference that the short delay had any detrimental impact. Rather, Plaintiff speculates that he believed that he had appendicitis and could have died. While Plaintiff was eventually diagnosed with mesenteric adentitis and stayed in the hospital for four days, his complaint is devoid of facts suggesting that the short delay had any detrimental impact or exacerbated that condition.

Nothing in Plaintiff's complaint can support an inference that Defendant Unknown Party was deliberately indifferent to Plaintiff's medical needs. While there was a short delay during which Defendant Unknown Party completed her COVID rounds before returning to Plaintiff and determining that he needed further treatment, Plaintiff has not alleged any detrimental effect from that delay. Accordingly, he fails to state an Eighth Amendment claim against Defendant Unknown Party.

c.     **Defendant Jones**

Plaintiff appears to suggest that Defendant Jones violated his Eighth Amendment rights by "nonchalant[ly]" responding to his medical needs. (ECF No. 1, PageID.4.) Plaintiff believed he suffered from appendicitis and that he could have died because of the delay in treatment. (*Id.*)

As discussed *supra*, Plaintiff fails to allege some detrimental effect from the short delay in treatment. Even if he had, his allegations fall short with respect to the subjective element of a deliberate indifference claim. Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' allegedly inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (concluding that custody officer was entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials) (citing *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989)). Moreover, non-medically trained prison officials are not deliberately indifferent when they defer to a "medical recommendation that he [or she] reasonably believes to be appropriate, even if in retrospect that recommendation was inappropriate." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018); *Stojcevski v. Macomb Cnty.*, 827 F. App'x 515, 522 (6th Cir. 2020) ("[A]n officer who seeks out the opinion of a doctor is generally entitled to rely on a reasonably specific medical opinion for a reasonable period of time after it is issued, absent circumstances such as the onset of new and alarming symptoms." (quoting *Barberick v.*

13

*Hilmer*, 727 F. App'x 160, 163–64 (6th Cir. 2018) (per curiam))). Furthermore, custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care.

Here, Plaintiff contends that when Defendant Jones came to his cube after he passed out and fell onto the floor, she initially told Plaintiff to "quit playing around and pick up the phone on the wall." (ECF No. 1, PageID.3.) Plaintiff told Defendant Jones that he could not stand because of the pain, and so she "gave him the phone she was holding and had him speak to Medical Staff." (*Id.*) Plaintiff alleges, however, that despite that phone call, "[n]othing took place." (*Id.*) A few hours later, when Defendant Unknown Party came to do COVID rounds, she did a brief assessment and then continued her rounds. After she completed rounds, she and Defendant Jones came to Plaintiff's cube, and Defendant Unknown Party assessed Plaintiff again and determined that something was wrong. (*Id.*, PageID.3–4.) At that time, Defendant Jones got a wheelchair to transport Plaintiff to the medical department. (*Id.*, PageID.4.)

Nothing in Plaintiff's complaint permits the Court to infer that Defendant Jones was deliberately indifferent to Plaintiff's medical needs. Presumably, the medical staff to whom Plaintiff spoke on the phone initially did not deem his situation emergent. Given that Plaintiff had spoken to medical staff, Defendant Jones was permitted to rely upon the providers' judgment. *See Winkler*, 893 F.3d at 895. Moreover, when Defendant Unknown Party determined that Plaintiff needed to be taken for further evaluation, Defendant Jones got a wheelchair for his transport to the medical department. The fact that Plaintiff was not transported to the hospital for further treatment until a few hours had passed does not support the inference that Defendant Jones deliberately disregarded a substantial risk of serious harm to Plaintiff. Plaintiff, therefore, has failed to state an Eighth Amendment claim against Defendant Jones.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 4.)

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to Section 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of Section 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   __August 24, 2022__                             /s/ Sally J. Berens
                                                                           SALLY J. BERENS
                                                                           U.S. Magistrate Judge